UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MAURICE COTTON,

            Plaintiff,

      v.                                      18-CV-1426 (JLS)

JOSEPH H. NOETH, ANNE MARIE
MCGRATH, J. WOLCOTT, JOEY
CLINTON, D. CLARY, T. BARBER,
MICHAEL H. CAPRA, M. KOPP, C.
JAMISON, S. DEGROAT,

            Defendants.

_____

       *Pro se* Plaintiff Maurice Cotton is a prisoner currently confined at the Green

Haven Correctional Facility ("Green Haven").  Cotton asserts claims under

42 U.S.C. section 1983, alleging that he was denied transfer requests to the Sing

Sing Correctional Facility ("Sing Sing"), where he sought to enroll in a Special

Master's Degree Program offered only at Sing Sing.  Dkt. 1.  He also submitted an

application to proceed *in forma pauperis* ("IFP") and filed a signed authorization.

Dkt. 2.

       This Court previously denied his IFP motion, concluding that he had

accumulated three strikes under 28 U.S.C. section 1915(g) and, therefore, could not

proceed IFP unless he was under imminent danger of serious physical injury.  *See*

Dkt. 10.  Cotton's motion for reconsideration was denied and he appealed.  Dkts.

11, 14.  The United States Court of Appeals for the Second Circuit remanded the

case to this Court for further proceedings, after determining that Cotton had not

1

accumulated three strikes. *Cotton v. Noeth*, 96 F.4th 249 (2d Cir. 2024); Dkt. 17
(Mandate).

    For the reasons that follow: (1) Cotton is granted permission to proceed IFP;
(2) Cotton's claim asserting a procedural due process violation is dismissed under 28
U.S.C. sections 1915(e)(2)(B) and 1915A; and (3) Cotton's retaliation claim will be
dismissed unless he files an amended complaint as directed below.

## DISCUSSION

    Because Cotton has met the statutory requirements of 28 U.S.C.
section 1915(a) and filed the required authorization, Dkt. 2, the Court grants his
request to proceed IFP.  Therefore, under 28 U.S.C. sections 1915(e)(2)(B) and
1915A(a), this Court must screen Cotton's Complaint.

    Section 1915 "provide[s] an efficient means by which a court can screen for
and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.
2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall
dismiss a complaint in a civil action in which a prisoner seeks redress from a
governmental entity, or an officer or employee of a governmental entity, if the court
determines that the action (1) fails to state a claim upon which relief may be
granted or (2) seeks monetary relief against a defendant who is immune from such
relief.  *See* 28 U.S.C. § 1915A(b)(1)–(2).  Generally, the court will afford a *pro se*
plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court
can rule out any possibility, however unlikely it might be, that an amended
complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal

2

quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.     THE COMPLAINT

In evaluating the Complaint, this Court must accept all factual allegations as true and must draw all inferences in Cotton's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir 2008) ("even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases").  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

Cotton has sued a number of prison officials of the New York State Department of Corrections and Community Supervision ("DOCCS"), some located at various correctional facilities at which he has been housed—Attica Correctional Facility ("Attica"), Green Haven, and Sing Sing—and others from the DOCCS

Central Office. Dkt. 1, at 18 ¶ 76.[1] Cotton alleges that they were involved in various decisions in retaliation for grievances he had filed, namely, declining to reduce his security classification and denying or delaying his transfer to Sing Sing so he could enroll in a Bachelor's or Master's Degree Program. *Id.*

A liberal reading of the Complaint, which is often repetitive and confusing, alleges the following. Sing Sing houses all prison level security classifications and is the only maximum-security prison that confers "SUNY/CUNY"[2] bachelor's degrees. *Id.* at 10 ¶¶ 1–2. It also is the only prison that confers master's degrees. *Id.* ¶ 3. Cotton has earned over 120 credit hours from SUNY and CUNY. *Id.* ¶ 5. On September 6, 2016, Defendant Michael Capra, Superintendent of Sing Sing, assumed students should have a bachelor's degree before enrolling in the master's degree program. *Id.* ¶ 7. "Defendants" denied Cotton a transfer to Sing Sing to receive either a bachelor's or master's degree. *Id.* ¶ 8.

On June 28, 2017 and May 2, 2018, Defendant McGrath, Associate Commissioner of DOCCS, delayed Cotton's application for a higher education transfer to Sing Sing and "correction of [his] (CMC) central monitoring case

---

[1] The Complaint consists of: (1) a court form for filing prison civil rights actions under 42 U.S.C. section 1983, which is mostly blank except for the caption and parties' names and addresses, Dkt. 1, at 1–7; an attachment setting forth Cotton's allegations and claims for relief, *id.* at 8–20; and exhibits, *id.* at 21–92.

Page references are to those generated by the Court's Case Management and Electronic Files System (CM/ECF).

[2] This refers to the State University of New York and City University of New York.

information in the institution's file." *Id.* ¶ 9, and Exh. E.[3] Defendants McGrath, as well as Jamison and DeGroat, Offender Rehabilitation Coordinators, have Cotton "recorded as being a Second Felony Offender and CMC [Central Monitoring Case]" due to Cotton's alleged second felony offender status relating to a 1989 false prison misbehavior report following Cotton's escape from custody and disciplinary punishment of two and one-half years, "indicating the criminal court got [his] sentencing wrong." *Id.* ¶ 10. Cotton claims he is sentenced as a first felony offender based on investigations and hearings into his former conviction and sentence for robbery. *Id.* at 11 ¶ 11. He was advised by the Grievance Committee that his request to have his institutional record corrected to reflect that he is a first felony offender was a matter that must be resolved through the courts. *Id.* ¶ 12, and Exh. F.

Defendants Jamison and DeGroat are responsible for Cotton's CMC designation and are required to reconsider Cotton for transfer or security classification every 90 days to six months based on correct information located in his institutional file. *Id.* ¶¶ 13, 15, and Exhs. H (DOCCS Directive No. 0701 ("Central Monitoring Cases")), I (DOCCS Directive No. 4020 ("Security

---

[3] The exhibits attached to the Complaint are often referred to herein to clarify, explain, or amplify Cotton's allegations. The Court deems the exhibits attached to the Complaint part of the pleading and considers them here. *See Cooper v. Dennison*, No. 08-CV-6238 CJS, 2011 WL 1118685, at *1 (W.D.N.Y. March 24, 2011) (in ruling on a 12(b)(6) motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.")

Classification and Guideline Decision Appeal")) and J (DOCCS Directive No. 4401 ("Guidance and Counseling Services")).  They also are responsible for transferring Cotton to the "special higher education programs." *Id.* at 11–12 ¶ 16, and Exhs. K and L.

On March 1, 2018, DeGroat's supervisor directed Cotton to address all matters regarding special higher education programs and transfers with DeGroat. *Id.* at 12 ¶ 19.  On April 30, 2018, after Cotton's numerous requests for the special programs, approval for said programs, and transfer, DeGroat advised Cotton that an unscheduled transfer to the special program at Sing Sing "was not going to be submitted," except by McGrath.  *Id.* ¶¶ 20–22, and Exh. N.  McGrath directed Cotton to write to DeGroat for transfers, while DeGroat directed him to write to McGrath.  *Id.* ¶ 23.  On May 15, 2018, DeGroat acknowledged Cotton's requests for approval to enroll in the special program.  *Id.* at 13 ¶ 24, and Exh. M.

On May 8, 2018, Cotton filed a grievance for an "active ninety-day unscheduled transfer review or a six-month scheduled transfer review."  *Id.* ¶ 25, and Exh. O.  DeGroat denied Cotton an "unscheduled and scheduled transfer review," and a "regular transfer" from Attica.  *Id.* ¶¶ 26–27.  DeGroat advised Cotton that Sing Sing would submit the transfer request.  *Id.* ¶ 28.  On August 1, 2018, DeGroat suggested that Cotton wait a total of three years, plus an additional 18 months, before a "passive transfer to the special program and out of Attica."  *Id.*

¶ 29, and Exh. P.[4] Cotton alleges he waited over 24 months for a "special-master-program-enrollment[,]" *id.* ¶ 30," even though "[i]t takes less than ninety[]days to complete submitted transfers," after he had been incarcerated for over ten years *id.* ¶ 31.

Between February 2 and May 2, 2017, Cotton was transferred from Auburn Correctional Facility to Green Haven; and between August 15 and October 28, 2017, he was transferred from Green Haven to Attica, within ninety days of a submitted transfer request. *Id.* ¶¶ 32–33. On July 6, 2017,[5] Cotton submitted a transfer request to Sing Sing and on August 18, Defendant Kopp, Sing Sing's Deputy Superintendent of Programs, denied Cotton's transfer request to Sing Sing. *Id.* at 14 ¶¶ 35–36, and Exhs. R and S.[6]

---

[4] Exhibit P is a memorandum from DeGroat, dated August 1, 2018, which states,

> As of 5/21/18 central office approved your transfer to the Green Haven Hub. It can take 18 plus months before being transferred to the downstate region, which Green Haven is classified as.
>
> You are not being skipped.

Exh. P.

[5] The Complaint sets forth this date as "August 26," but the date on the memorandum is "July 6." Dkt. 1, at 14 ¶ 35, and Exh. R.

[6] Exhibit S, dated August 18, 2017, states,

> I have been advised by DSP Malin of Sing Sing CF, that you actually have not been accepted into the NY Theological Seminary Program. Apparently, there was some miscommunication between the employee of Sing Sing CF and Mr. Sheldon.
>
> We apologize for the misinformation provided.

On October 30, 2017, Cotton was at Attica, and on December 11, 2017, Defendant Barber (Attica's Education Supervisor and Program Committee Chairperson) referred Cotton to DeGroat regarding a special program transfer to Sing Sing. *Id.* ¶ 37. On February 23, 2018, DeGroat denied Cotton the "submission" of a special program transfer to Sing Sing and, in April 2018, DeGroat denied Cotton a "regular" transfer. *Id.* ¶¶ 38–39, and Exh. U. On September 14, 2018, Barber began work on Cotton's "higher education file," and Cotton had to contact Defendants Barber, DeGroat and Jamison, Green Haven's Offender Rehabilitation Coordinator, or "Agent Sheldon about the special program active transfers pursuant to administrative law." *Id.* ¶¶ 41–42, and Exh. W (DOCCS Directive No. 4804, Section VII C ("On-site College Programs")).

On January 12, 2017, Sing Sing's Program Director, Reverend Sabune, notified Cotton that a 21-plus-page "Master Degree Application-Contract" was filed. *Id.* ¶ 43, and Exh. X. On July 6, 2017, Agent Sheldon, Education Supervisor, informed Cotton that he had been "accepted for the class of 2018/2019." *Id.* at 15 ¶ 47, and Exh. R. On July 4, 2018, Cotton was advised of his enrollment by Sabune. *Id.* ¶ 48, and Exh. Y. McGrath, Sing Sing's Central Education Department, and the college, all had to approve Cotton's application before he was notified of his enrollment by Sheldon and Sabune. *Id.* ¶ 50.

Cotton alleges that Defendants denied his transfer requests because he is "currently between Attica and Green Haven over eighteen months or three automatic reductions in security classification reviews." *Id.* ¶ 51. He claims he has

8

been denied "automatic transfers or reductions in security classification" because he has filed grievances. *Id.* ¶ 53. Defendant Clary, Attica's Deputy Superintendent of Security, has informed Cotton that he is not involved in Classification and Movement's "scheduling process [and that Cotton's] area of preference has been approved and [he] will be scheduled[]" but, due to security reasons, he will not be informed when he will be transferred. *See id.*, and Exh. Z. Clary is "ultimately in charge of transfers." *Id.* at 16 ¶ 55.

On August 21, 2018, Cotton filed grievances and grievance appeals regarding the approved transfer order. *Id.* ¶ 56, and Exh. 2. On September 12, Defendant Wolcott, Attica's First Deputy Superintendent, advised Cotton there is "nothing to do" other than to grieve Sabune, while Joey Clinton, Attica's Deputy Superintendent of Programs, contended that Wolcott was handling the request for transfers. *Id.* ¶ 57, and Exh. 3. Cotton filed appeals and grievances requesting transfers with Defendant Noeth, Attica's Superintendent, and they were forwarded to Wolcott and Clinton. *Id.* ¶ 58, and Exh. 4.

On September 12, 2018, Wolcott advised Cotton in a memorandum that, "[a]s of today," Cotton had been approved for an "area of preference transfer" to the Green Haven Hub. *Id.*, Exh. 3. While the "general rule" is that DOCCS does not approve transfers to specific facilities for placement in college programs, even if accepted in the program, Wolcott learned that there is an exception for placement in the Master's Program at Sing Sing and that, while Cotton received an acceptance letter, he was not placed on the transfer list submitted by Sing Sing. *Id.* Wolcott

suggested in the same memorandum that, upon the recommendation of the Education Director, Cotton contact Sing Sing's Program Director Sabune, "for a possible resolution." *Id.* Wolcott also "contended" that Sing Sing or Sabune is responsible for the transfers, "despite the Memos, Directives, and rules that Defendants DeGroat, Barber, Jamison and Clary are responsible." *Id.* at 16 ¶¶ 60–61, and Exh. 3. On October 26, Cotton was transferred back to Green Haven. *Id.* ¶ 62.

On November 2, 2018, Defendant Jamison, Green Haven's Offender Rehabilitation Coordinator, denied Cotton's transfer to the Master's Program at Sing Sing because, on August 18, 2017, Sing Sing's Superintendent Capra cancelled the transfer. *Id.* ¶ 63. Cotton alleges that Jamison stated that, "although a felony cannot be used against an offender in society when seeking employment," the 1989 false prison disciplinary report is being used against Cotton and that she will not submit any paperwork for a transfer to higher education programs until she receives an order from her supervisors. *Id.* at 17 ¶¶ 64, 66. DeGroat and Jamison contended that the facility's records indicated that the 1989 disciplinary report alleged that Cotton escaped and served two and one-half years of a 60-month keeplock sentence based on good behavior. *Id.* ¶ 67. Cotton was never charged with the crime of escape. *Id.* ¶ 68.

Cotton alleges that Jamison and DeGroat indicated that he was being "punished, harassed, played with, not transferred nor reduced in security classification because [he is] not at Sing Sing pursuant to Directives and Memos."

*Id.* ¶ 65.  Cotton claims he was "being punished, harassed, played with and denied due reduction in security classification for the false 1989 misbehavior report based on an invalidated felony conviction and sentence because defendants have [him] confused with another offender." *Id.* ¶ 69.  On November 13, 2018, Cotton appealed to Capra, McGrath, and Kopp, requesting a higher education transfer to Sing Sing and that his transfer not be tampered with by anyone. *Id.* ¶ 70.

## II.    SECTION 1983 CLAIMS

To state a valid claim under 42 U.S.C. section 1983, the plaintiff must "allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir.1994)).  Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under section 1983, a plaintiff must allege that official's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d

11

137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

A.   **Retaliation**

Cotton claims that Defendants violated the First Amendment "by denying [him] transfers or reduction in security class[ification], special higher education program transfer and rehabilitation in retaliation for filing grievances." Dkt. 1, at 11 ¶ 76. This claim is dismissed under 28 U.S.C. sections 1915(e)(2)(B)(ii) and 1915A(b)(1) unless Cotton files an amended complaint as directed below.

It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance is a deprivation of a constitutionally-protected right. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."). A "claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam)). The plaintiff must establish that, "but for his exercise of a protected right, the alleged wrongful action would not have been taken." *McEachin v. Bek*, No. 06–CV–6453 (MAT), 2012 WL 1113584, at *3 (W.D.N.Y. Apr. 2, 2012)

12

(citing *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)); *see also Majid v. Henderson*, 533 F. Supp. 1257, 1270 (N.D.N.Y. 1982) (inmate bears the burden of demonstrating that he would not have been transferred but for the exercise of the constitutional right), *aff'd*, 714 F.2d 115 (2d Cir. 1982).

"[P]risoners' claims of retaliation" are examined "with skepticism and particular care" because courts "recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti*, 983 F.3d 618). Because of the potential for abuse, the Second Circuit has held that a complaint that "alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

Cotton's complaint is exactly that—it alleges retaliation in conclusory terms only. The complaint is detailed about his efforts to request and obtain a transfer to Sing Sing for purposes of enrolling in a master's degree program—New York Theological Seminary's Master of Professional Studies. But his allegations of retaliation based on grievances he filed in relation to those efforts and the denials of transfer requests are not supported by any factual detail.

In order to establish a claim under section 1983, a plaintiff must show that the conduct was protected, that there was an adverse action, and that there was a

causal connection between the protected conduct or speech and the adverse action.
*Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Cotton's filing of grievances is
clearly protected conduct, *see Graham*, 89 F.3d at 80, and the denial of a transfer to
the only facility that offers the educational degree program at issue is, for purposes
of this screening, an adverse action. *See Dawes v. Walker*, 239 F.3d 489, 493 (2d
Cir. 2001) ("Only retaliatory conduct that would deter a similarly situated
individual of ordinary firmness from exercising his or her constitutional rights
constitutes an adverse action for a claim of retaliation."), *overruled on other grounds
by Swierkiewicz,* 534 U.S. 506; *see also Tuitt v. Chase*, No. 11–CV–0776, 2013 WL
877439, at *8 (N.D.N.Y. Jan. 30, 2013) (where defendants "d[id] not dispute that
removing [p]laintiff from the [sex offender program] constituted an 'adverse action,'"
complaint met second prong of retaliation test at motion to dismiss stage), *report
and recommendation adopted*, No. 11–CV–0776, 2013 WL 877617 (N.D.N.Y. Mar. 8,
2013).

Cotton's complaint fails, however, to allege any causal connection between his
filing of grievances and the denials of his transfer requests to Sing Sing so that he
could enroll in the master's degree program there. Cotton "bears the burden of
showing . . . that the protected conduct was a substantial or motivating factor in the
prison officials' decision to [take the action it did against Cotton]." *See Graham*, 89
F.3d at 79 (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

Cotton alleges only that he was denied such a transfer to Sing Sing "in
retaliation for filing grievances." Dkt. 1, at 18 ¶ 76. While Cotton filed several

grievances in relation to his complaints herein—*e.g.*, denial of transfer requests to Sing Sing—there are no allegations to support an inference that the grievances were a substantial or motivating factor in Defendants' decisions to deny his transfer requests. *See Graham*, 89 F.3d at 79. In the absence of any factual allegations to support such an inference, *see Davis*, 320 F.3d at 354 ("allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'") (quoting *Dawes*, 239 F.3d at 492)), this claim must be dismissed because it fails to state a claim upon which relief can be granted.

The Court grants Cotton leave to amend this claim. *See Cuoco*, 222 F.3d at 112 (district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (internal quotation marks and citation omitted)).

### B.   Procedural Due Process: Denial of Access to Program

While the Complaint expressly alleges only a First Amendment retaliation claim, it also could be construed as alleging a procedural due process claim based on the denial of participation in or access to programming. *See Graham*, 89 F.3d at 79 ("the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest'" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). To succeed on such a claim, a plaintiff must establish that (1) he or she was deprived of a liberty interest, (2) without due process of law.

It is widely recognized that "a prison inmate enjoys no recognized property interest in prison work assignments or programs." *Williams v. Bailey*, No. 09-CV-

15

0643, 2010 WL 3881024, at * 4 (N.D.N.Y. Sept. 3, 2010) (citing *Atkinson, III v. Fischer*, No. 07–cv–00368, 2009 WL 3165544, at *11 (N.D.N.Y. Sept. 25, 2009); *see also Johnson v. Rowley*, 569 F.3d 43, 44 (2d Cir. 2009)).  Courts considering inmate claims "regarding denial of participation in or access to prison programs or privileges under *Sandin* [*v. Conner*, 515 U.S. 472, 484 (1995)], have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life." *Id.* (quoting *Thompson v. LaClair*, No. 08–CV–0037, 2009 WL 2762164, at *5 (S.D.N.Y. Aug. 25, 2009)); *see also Myers v. Johns*, No. 05-CV-1448, 2008 WL 5115249, at *3 (N.D.N.Y. Dec. 4, 2008) (inmate did not have a protected liberty interest in taking the General Equivalency Diploma (GED) exam or to participate in any particular school class (citation omitted)).

Thus, to the extent the Complaint can be construed as asserting a procedural due process violation, it is dismissed without leave to amend because leave to amend would be futile.  *See Cuoco*, 222 F.3d at 112 ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted).

## CONCLUSION

Because Cotton has met the statutory requirements of 28 U.S.C. section 1915(a) and has filed the required authorization, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, (1) Cotton's Fourteenth Amendment procedural due process claim is dismissed without leave to amend, and (2) his First Amendment retaliation claim will be dismissed under 28 U.S.C.

16

sections 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint **within 45 days of the date of entry of this Decision and Order** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Cotton is advised that an amended complaint is intended to **replace completely** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the Defendants so that the amended complaint stands alone as the only complaint that defendants must answer in this action.

## ORDER

In light of the above,

IT HEREBY IS ORDERED that Cotton's motion to proceed *in forma pauperis* is granted; and it is further

ORDERED that the Fourteenth Amendment procedural due process claim is dismissed without leave to amend; and it is further

ORDERED that Cotton is granted leave to file an amended complaint with respect to the First Amendment retaliation claims only as directed above **within 45 days of the date of entry of this Decision and Order**; and it is further

ORDERED that if Cotton does not file an amended complaint as directed above, the Complaint shall be dismissed; and it is further

17

ORDERED that if the Complaint is dismissed because Cotton has not filed an amended complaint, the Clerk of Court shall close this case as dismissed without further order; and it is further

ORDERED that if the Complaint is dismissed because Cotton has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:     May 1, 2024
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE